**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROSE SAWYER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF CHICAGO, )<br>R.T. KROLIKOWSKI, )<br>)<br>Defendants. ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

NOW COMES Plaintiff, Rose Sawyer, by and through her counsel, Melinda Power and Amanda Yarusso, and alleges the following facts and claims against the Defendants City of Chicago, Chicago Police Detective R. T. Krolikowski (badge #20677) and Unidentified Chicago Police Officers. Plaintiff seeks to hold the individual Defendant Officers accountable for the unlawful seizure, false arrest, unlawful detention, and unjustified use of excessive force against Plaintiff while attending a protest in the wake of the murder of George Floyd, and for Defendant City of Chicago's policies and practices that caused these constitutional violations pursuant to *Monell*. In support, Plaintiff Sawyer alleges as follows:

**INTRODUCTION**

1. Like many cities around the country, especially those with histories of police misconduct such as Chicago, protests erupted in Chicago in response to the murder of George Floyd by Minneapolis police in May 2020.

2. Chicago Police Krolikowski and/or other Unidentified Chicago Police Officers (collectively and hereinafter "Defendant Officers") unlawfully seized, falsely arrested and detained, and assaulted, battered and injured Plaintiff Sawyer, a peaceful protester, who posed no

threat to anyone.

3. As a result, Plaintiff was held in custody for hours until being released without being formally charged. Further, Plaintiff was bruised, bloodied, and in pain, trauma and distress as a result of the Defendant Officers' actions.

**PARTIES**

4. Plaintiff Rose Sawyer is an Illinois resident who lives in Chicago. At all times relevant to this Complaint, Plaintiff was attending a peaceful assembly in the exercise of her First Amendment rights.

5. The Defendant Officers are Chicago Police officers who committed the acts set forth below as agents of Defendant City of Chicago.

6. The Defendant Officers engaged in the conduct complained of in the course and scope of their employment and under color of law.

7. Defendant City of Chicago ("City" or "Chicago") is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of the individual Defendant Officers.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

9. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**FACTS**

10. On May 30, 2020, around 5:30 p.m., protesters gathered on State and Van Buren streets, located in downtown Chicago.

11. At all times relevant in this Complaint, Plaintiff was present at the protest to peacefully observe and exercise her First Amendment rights.

12. Plaintiff followed the crowd northbound on State Street toward the area at or near the Wrigley Building where she continued participating in the protest.

13. At or around 6:00 p.m., Plaintiff was in the area of the Wrigley Building on Michigan Avenue in Chicago when one or more Unidentified Chicago Police Officers seized her.

14. In the process, Unidentified Chicago Police Officer(s) arbitrarily grabbed Plaintiff from behind, pushed her to the ground for no reason, and pulled Plaintiff behind the police line.

15. Plaintiff was bruised and injured as a result.

16. Eventually the Unidentified Chicago Police Officer(s) released Plaintiff, and Plaintiff got up off the ground. Plaintiff remained trapped behind the police line and separated from the civilian protestors.

17. When Plaintiff attempted to reunite with the gathered protestors, Unidentified Chicago Police Officers grabbed Plaintiff, again, for no legally justifiable reason.

18. Unidentified Chicago Police Officers threw Plaintiff to the ground and arrested her, injuring her in the process.

19. Unidentified Chicago Police Officers then handcuffed Plaintiff with plastic cuffs.

20. These officers put the handcuffs very tightly on Plaintiff and Plaintiff began to lose circulation in her wrists.

21. The officers then took Plaintiff to the area of Trump Tower where one or more police officer had to remove the handcuffs from Plaintiff because they were excessively tight and causing Plaintiff pain and injury. One or more officers then handcuffed Plaintiff again with plastic cuffs.

22. Unidentified Chicago Police Officers detained Plaintiff at or near Trump Tower for approximately two hours until she was put on a police transport bus and taken to the Belmont and Western police station.

23. Once at the Belmont and Western police station, Plaintiff was continually seized and detained on the bus for four hours with no water and closed windows (despite the warm weather and crowded bus), and no access to a restroom.

24. At the police station, Defendant Krolikowski prepared a blatantly false arrest report for Plaintiff, stating that Plaintiff had committed disorderly conduct by assembling with three or more persons to breach the peace despite the fact she was arrested alone at the location of the Wrigley Building.

25. Defendant Krolikowski further falsely claimed that Plaintiff had assembled with three or more persons for the purpose of disturbing the peace through the use of force or violence.

26. During all of the events described herein, Plaintiff posed no threat to the officers, did not interfere or attempt to interfere with the officers' actions, and did not use force or violence to disturb the peace.

27. No Chicago police officer had any probable cause or other legal basis to seize, arrest or detain Plaintiff.

28. None of the Unidentified Chicago Police Officers gave Plaintiff any orders or any warning that they were about to seize her or use physical force on her before they unjustly used excessive force against her.

29. Plaintiff was held in custody for approximately 18 hours before being released with no charges.

30. Plaintiff suffered increased pain, suffering and loss of sleep that night and the following day and for days to come, and mental trauma which interfered with her ability to work and carry out her daily activities.

31. The Chicago Police Department ("CPD") and the City of Chicago have a long history of the use of false arrest and excessive force against peaceful protestors.

32. Chicago police officers' use of force against protestors and dissenters and people who struggle for justice is well-documented.

33. Chicago police used force – and there is credible information they committed out right murder – against the labor movement in Chicago in the late 1800s. Most infamously, Chicago police deliberately opened fire on a crowd of labor rights supporters, composed mainly of anarchists, on May 4, 1855, in the Haymarket area of Chicago. This event is now widely known as the Haymarket Massacre.[1]

34. In 1919, in the aftermath of WW1, white people in Chicago were actively trying to control the lives of and access to open spaces for Black people.[2]

35. One hot summer day, Eugene Williams, a Black youth, was swimming at a Hyde Park beach when he ventured into the area whites considered their exclusive part of Lake Michigan.

36. White people attacked and drowned him.

37. In response, Black people protested and denounced the racist violence of this particular action, and the racism they experienced on a daily basis.

38. During the protests, white people attacked Black protestors.

---

[1] *Haymarket: A story of Chicago, the First Labor Movement and the Bombing that Divided Gilded Age America* by James Green.
[2] *Landscapes of Hope: Nature and the Great Migration to Chicago* by Brian McCammack

39. Chicago police arrested mainly Black protestors, and let white people, who had provoked or actively supported the attack on Black people, continue to riot.

40. More recently, in the late 1960s and early 1970s, Chicago was the scene of many anti-Vietnam war protests, and demonstrations in support of Black and Latino civil and human rights.

41. In response, the police rampantly arrested and beat anti-war, civil rights and human rights protestors.[3]

42. On March 20, 2003, the City of Chicago falsely detained and or arrested over 850 protestors objecting to the Iraq war in the area of Michigan and E. Lake Shore Drive.[4]

43. Chicago police used excessive force against a significant number of those protestors, without any legal justification.

44. Having failed to learn from history and to make any significant and lasting changes to their policies and practices, in response to the summer 2020 protests subsequent to George Floyd's murder by police officers, Chicago police have continued their history and pattern of falsely detaining, arresting and using excessive force against peaceful protestors.[5]

45. The Department of Justice (DOJ) issued a report in 2017 detailing the use of force by the Chicago Police Department ("DOJ Findings Report"). [6]

46. The DOJ investigation assessed the CPD's use of force, and addressed CPD policies, training, reporting, investigation, and review related to officer use of force.

---

[3] *Gregory v. City of Chicago*, 394 U.S. 111 (1969), *Chicago 68,* by David Farber (1988), *The Chicago Freedom Movement: Martin Luther King Jr. and Civil Rights Activism in the North (Civil Rights and the Struggle for Blac Equality in the Twentieth Century)* by Mary Lou Finley and Bernard Lafayette (2016) and *Puerto Ricans* in the Encyclopedia of Chicago, Gina M. Perez.
[4] *Vodak v. City of Chicago,* 639 F.3d 738, 745-746 (7th Cir. 2011).
[5] *Banister v. City of Chicago,* 21-1658, *Martin v. City of Chicago*, 21-3695 and *Protestors in Support of Black Lives et al. v. City of Chicago et al., 20-06851.*
[6] https://www.justice.gov/opa/file/925846/download

47. The DOJ Findings Report concluded that "CPD officers engage in a pattern or practice of using force that is unjustified, disproportionate, and otherwise excessive. . . CPD officers use unnecessary and unreasonable force in violation of the Constitution with frequency, and that unconstitutional force has been historically tolerated by CPD."

48. The DOJ's review of the complaints led it to conclude that uses of force by the CPD "were not aberrational." Instead, "our holistic review of this information, combined with our investigation of CPD's training, supervision, accountability, and other systems, give us reasonable cause to believe that the unreasonable force we identified amounts to a pattern or practice of unlawful conduct."

49. The report further found that the CPD's of unreasonable force to quickly resolve non-violent encounters is a recurrent issue at the CPD.

50. According to the DOJ Findings Report, the CPD, as a matter of pattern and practice, relies upon overly aggressive tactics that unnecessarily escalate encounters with individuals and that increase tension that leads to the CPD's use of excessive force and unlawful seizures and arrests. The CPD also fails to de-escalate encounters when it would be reasonable and feasible to do so.

51. These patterns, practices and de facto policies are evident in Chicago police officers' conduct and actions in the context of protests, both historically, as described above, and currently, as seen during the events of the summer of 2020 following the killing of George Floyd.

52. In February 2021, the CPD released a 26-page report: After Action Report: The Chicago Police Department's Response to Civil Unrest between May 29, 2020 and June 12,

2020.[7] CPD's After Action report failed to address many of the obvious policy and practice failures that resulted in excessive and unnecessary force, seizures and arrests of peaceful protestors. However, in this report, the CPD makes a number of key admissions about its failed response to the 2020 uprisings. Those admissions include:

    i. CPD officers were not prepared to respond to "large-scale, unplanned incidents."

    ii. CPD's training failed to prepare newer officers for wide scale protests and CPD officers failed to comply with existing policies regarding mass arrests.

    iii. CPD officers were deployed to respond to the protests without any "specific plans"— a decision the CPD calls "ineffective."

    iv. "[S]ome Department members were observed during the Events with their names and/or badges removed from their uniforms or otherwise obscured in violation of Department policy."

    53.    Also in February 2021, the Officer of the Inspector General for the City of Chicago released a Report on Chicago's Response to George Floyd Protests and Unrest.[8] That report was based on "thousands of documents" and more than 70 interviews conducted with CPD officials. The OIG Protest Report also relied upon testimony from protesters provided during federal court proceedings, arrest reports, and an analysis of over 100 hours of body worn camera footage. Based on this information, the OIG made the following findings:

    i.    CPD made more than 1,500 related arrests between May 29 and June 7, 2020. The

---

[7] After Action Report: The Chicago Police Department's Response to Civil Unrest between May 29, 2020 and June 12, 2020, THE CHICAGO POLICE DEPT. (February 2021) https://home.chicagopolice.org/wp-content/uploads/2021/02/AAR_FINAL_2-4-21.pdf (hereinafter "CPD After Action Report").
[8] Report on Chicago's Response to George Floyd Protests and Unrest, CITY OF CHICAGO OFFICE OF INSPECTOR GENERAL, 15 (February 18, 2021) https://igchicago.org/wp-content/uploads/2021/02/OIG-Report-on-Chicagos-Response-to-George-Floyd-Protests-and-Unrest.pdf (hereinafter "OIG Protest Report")

      OIG documented that CPD failed to train officers on mass arrest procedures and held protesters "without proper documentation" and "threatened" the safety of protesters through lengthy delays in transportation and processing. The report further describes CPD's arrest related records as "uneven and incomplete."

ii. CPD officers detained protesters for prolonged time periods: "on average, arrestees were detained for a total of 14.0 hours. The briefest total detention time recorded was 1.2 hours and the longest was 53.3 hours."

iii. The OIG Protest Report contains extensive documentation regarding CPD's failures to "fulfill its force reporting obligations" and to "provide clear and consistent guidance to officers on reporting obligations." The report notes that there was significant confusion among "CPD's highest ranks" and "rank and file" members about the reporting requirements during the uprisings. As a result, "CPD underreported uses of baton strikes and manual strikes, further resulting in an inadequate record of severe and potentially out of policy uses of force."

iv. The OIG Protest Report further describes how CPD exempted from review CPD officers' use of force during the uprisings. None of the CPD officer's use of force at protests was reviewed by the Force Review Division, which conducts internal and non-disciplinary reviews of force in order to ensure "reporting obligations are met" and to identify "tactical, equipment or policy concerns." As a result, CPD officers' use of force during the uprisings was not subject to any meaningful accountability process.

v. The OIG Protest Report describes other forms of CPD violence during the uprisings. Specifically, the report documents that "protesters reported seeing and experiencing

apparently indiscriminate uses of force by CPD members. They describe seeing CPD members tackle, punch and use batons to strike peaceful protesters in the head and neck."

vi. The OIG Protest Report notes that on May 30, 2020, "CPD officers used their batons to push protesters off the bridge onto Lower Wacker Drive. Accounts from protesters on the bridge note that they did not hear a dispersal order before officers began to push them with batons. . . During the push, protesters described being beaten with officers' batons, punched, and kicked as CPD tried to clear the bridge."

54. These findings describe conduct similar to what Plaintiff experienced and demonstrate that the Defendant Officers' unlawful and unconstitutional seizure, force, arrest and detention of Plaintiff was part of a widespread pattern of Chicago police officers' treatment and abuse of protestors.

## COUNT I
### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983

55. Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

56. As described in the preceding paragraphs, the conduct of Unidentified Chicago Police Officers towards Plaintiff constituted excessive force in violation of the United States Constitution when they seized Plaintiff, threw Plaintiff to the ground, dragged her and applied the handcuffs on Plaintiff's wrists too tightly.

57. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and/or reckless indifference to the rights of Plaintiff.

10

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from Defendants Unidentified Chicago Police Officers and whatever additional relief this Honorable Court deems equitable and just. In addition, Plaintiff demands punitive damages against Defendants since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights.

## COUNT II
### 42 U.S.C. § 1983 - UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

58. Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

59. The actions and conduct of the Unidentified Chicago Police Officers as set forth above, in seizing Plaintiff without probable cause or other lawful basis, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and detention. The Unidentified Chicago Police Officers should be held liable for doing so pursuant to 42 U.S.C. § 1983.

**60.** The actions and conduct of the Unidentified Chicago Police Officers, as set forth above, were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights and caused Plaintiff emotional distress, fear, anguish, humiliation, trauma and loss of liberty as set forth more fully above.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from the Unidentified Chicago Police Officers and whatever additional relief this Honorable Court deems equitable and just. In addition, Plaintiff demands punitive damages against the Unidentified Chicago Police Officers since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights.

## COUNT III
### FALSE ARREST AND UNLAWFUL DETENTION IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983

61. Plaintiff realleges the above paragraphs with the same force and effect as if fully set forth herein.

62. The actions and conduct of the Defendant Officers (Defendant Krolikowski and Unidentified Chicago Police Officers), as set forth above, in falsely arresting and unlawfully detaining Plaintiff on May 30, 2020 under color of law and without probable cause violated her Fourth Amendment right to be free from unreasonable seizure and the individual Defendant Officers should be held liable for doing so pursuant to 42 U.S.C. § 1983.

63. The actions and conduct of Defendants, as set forth above, were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights and caused her emotional distress, fear, anguish, trauma and loss of liberty as set forth more fully above.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from the Defendant Officers and whatever additional relief this Honorable Court deems equitable and just. In addition, Plaintiff demands punitive damages against the Defendant Officers since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights.

## COUNT IV
### 42 U.S.C. § 1983 POLICY AND/OR PRACTICE *MONELL* CLAIM AGAINST THE CITY OF CHICAGO

64. Plaintiff realleges the above paragraphs with the same force and effect as if fully set forth herein.

65. This Count is alleged against the City of Chicago.

66. The Defendant Officers acted under the color of law and pursuant to one or more

interrelated *de facto* policies, practices, and/or customs of the CPD to violate Plaintiff's rights as set forth above.

**WHEREFORE**, Plaintiff demands actual or compensatory damages plus the costs of the action and attorneys' fees, and whatever additional relief the Court deems equitable and just.

### COUNT V
### CLAIM AGAINST DEFENDANT CITY OF CHICAGO
### PURSUANT TO 745 ILCS 10/9-102

67. Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

68. Defendant City of Chicago was the employer of Defendant Officers at all times relevant to the complaint.

69. Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employee of the City of Chicago.

**WHEREFORE**, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the City of Chicago in the amount awarded to Plaintiff and/or against Defendant Officers as damages, attorneys' fees, costs, and interest and/or for any settlement entered into between Plaintiff and Defendants, and for whatever additional relief the Court deems equitable and just.

70. Plaintiff demands trial by a jury on all claims.

Submitted by:

s/Melinda Power  
Melinda Power  
West Town Community Law Office  
2502 W. Division, Chicago, Illinois 60622  
T: 773/278-6706 F: 773/278-0635  
Melindapower1@gmail.com

s/Amanda S. Yarusso  
Amanda Yarusso  
111 W. Washington St, #1500  
Chicago, Il 60602  
T: 773-510-6198  
amanda.yarusso@gmail.com